JOHNSON *v.* AMERICAN BANK OF COMMERCE & TRUST CO.

Opinion delivered May 12, 1924.

1. BILLS AND NOTES—DISCHARGE OF NOTE.—Where a note was renewed from time to time, and the original note was surrendered only when a renewal note was delivered, Crawford & Moses' Dig., § 7885, subd. 5, providing that the note is discharged when the principal debtor becomes a holder at or after maturity, has no application.

2. BILLS AND NOTES—BURDEN OF PROOF.—Where the original note was renewed from time to time, and the payee always had an uncanceled note which evidenced the balance due, Crawford & Moses' Dig., § 7889, providing that, where a note or signature thereon appears to have been canceled, the burden of proof is on the party who alleges that the cancellation was unintentional, or under mistake, or without authority, was not applicable.

3. BILLS AND NOTES—AUTHORITY TO SIGN NOTE—EVIDENCE.— Evidence *held* to sustain a finding that one of the original makers of a note signed the name of one of his co-makers to a renewal note with authority.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Minor Pipkin,* for appellant.

It is provided that a negotiable instrument is discharged when the principal debtor becomes the holder

thereof at or after maturity in his own right.   C. & M. Digest, § 7885, subdv. 5.   And the burden of proving an unintentional cancellation, or cancellation by mistake, rests on the party alleging it.   Here there is neither allegation nor proof to that effect.   C. & M. Digest, § 7889.

*Norwood & Alley,* for appellee.

If the appellant signed the original note, and it was surrendered upon the acceptance of a renewal note, he is liable for the balance due on the original note, even though his signature to the new note was not authorized. 96 Ark. 268; 106 Ark. 157.

Smith, J.   On January 16, 1920, L. H. Johnson executed to appellee his note for $3,000, and the names of G. H. Johnson and F. L. Johnson, who are brothers of L. H. Johnson, were also signed to the note as joint makers, although, as between the Johnsons, L. H. Johnson was the principal and his brothers were sureties.   The note was renewed from time to time, payments being made at each renewal, until on October 3, 1921, the date of the last renewal, only a thousand dollars remained unpaid, and a note was executed for that amount.   This note was signed by the three Johnsons as apparent joint makers, and, not being paid or renewed at maturity, this suit was brought to enforce payment.

The original loan from appellee was made by J. D. Covey, a vice-president of the bank, who acted for it in making the original loan and the various renewals, and he testified that he had no intimation that the note had not been signed by the three Johnsons, as it purported to be.   All the transactions in regard thereto were by mail.

L. H. Johnson admitted his liability, and judgment was rendered against him by default, but his brothers defended upon the ground that the signing of their names was a forgery, and that they had not signed the original note or any of the renewals, and had not authorized any one to sign their names.

L. H. Johnson testified that he and his brothers had all signed the original note, but that he alone had signed the renewals, and that he had signed the names of his brothers to the note sued on and to the other renewal notes, but he thought he had the authority so to do. He testified that he was cashier of the bank at which he and his brother G. H. Johnson carried a partnership account, that he had charge of the partnership business, and in the conduct thereof signed the name of his brother G. H. Johnson to numerous notes and checks relating to this business, and that he had authority to do this, but he admitted that the loan evidenced by the original note and the renewals thereof was his private business, and not a partnership affair.

At the request of the plaintiff, and over the objection of the defendants, the court instructed the jury that, if G. H. Johnson or F. L. Johnson executed the note for $3,000, and if there remains due thereon the sum of a thousand dollars, to find for the plaintiff, and further, to find for the plaintiff unless they believed, from all the evidence and circumstances, that the defendants did not sign the note or authorize L. H. Johnson to sign their names to it. These propositions were covered by instructions numbered 1 and 2.

At the request of G. H. Johnson the court instructed the jury as follows: "1. Unless you find from a preponderance of the evidence that G. H. Johnson signed his name to the original note sued on herein, then you will find for said defendant, G. H. Johnson."

The court also instructed the jury, in an instruction numbered 3, that, even though they should find that G. H. Johnson did not sign the original note, yet, if they should also find that he signed as a surety, and this fact was known to plaintiff, or its agent, and that said note was renewed from time to time, without his signature being placed on the last renewal note by him or with his authority, and that the renewal was without his consent, to find for him. Similar instructions were given in regard to F. L. Johnson at his request.

The jury returned a verdict against G. H. Johnson, but in favor of F. L. Johnson, and G. H. Johnson has appealed. The bank has not appealed from the judgment in favor of F. L. Johnson.

According to the testimony of L. H. Johnson, he and his brothers all signed the original note, and his testimony was evidently credited by the jury, otherwise, under the instruction, the verdict would have been for both defendants.

Appellant cites § 7885, subdivision 5, C. & M. Digest, as discharging him from liability on the note, which reads as follows: "A negotiable instrument is discharged: * * * (5) When the principal debtor becomes the holder of the instrument at or after maturity, in his own right." The language quoted has no application to the facts of this case. The Johnsons did not become the holders of the note within the meaning of this statute. The original note was only surrendered when the renewal note was delivered in lieu of it. The bank was at all times in possession of the note which evidenced the then existing indebtedness.

Appellant also cites § 7889, C. & M. Digest, as discharging him, which provides that, where an instrument or any signature thereon appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally or under a mistake or without authority. This section has no application to the facts of this case, because, as we have said, there was always an uncanceled note which evidenced the balance due at any given time.

We think the instructions fairly submitted the issues to the jury. The instructions told the jury to find for both G. H. and F. L. Johnson, unless the jury found, from a preponderance of the evidence, that they had signed the note, and L. H. Johnson testified that they had done so. The jury had the right to accept this testimony, and the verdict is conclusive of that question. Both G. H. and F. L. Johnson knew that the note had matured and that they had paid nothing on it, and we

think the jury was warranted in finding that they knew that renewals were being made by the execution of notes to which their names were signed.   This is true at least as to G. H. Johnson, and the jury's verdict was in favor of F. L.   The three brothers were closely associated in the operation of a bank.   L. H. Johnson was the cashier, G. H. was the president, and F. L. was a stockholder. G. H. Johnson admitted that, with his knowledge and permission, L. H. Johnson had signed his name to numerous notes, representing thousands of dollars, and we think the jury had the right to draw the inference that, if L. H. Johnson had the right to sign G. H. Johnson's name to notes in new transactions, involving thousands of dollars, he had the right to sign his name in renewal of a note which G. H. Johnson had himself signed.

Appellant insists that instruction numbered 1 was erroneous in that it ignored the evidence concerning the cancellation of the original note and the presumption that it was thereby discharged.   But this defense was presented in instruction numbered 3, given at the request of appellant.   In that instruction the jury was told, if they believed that G. H. Johnson was a surety on the note, and that it was renewed from time to time without his signature being placed on the last renewal note by him, or with his authority, to find for appellant.   The instruction was given as asked, and there was no request that instruction numbered 1, given at the request of appellee, be modified to express the same declaration of law.   It was appellee's theory that all three brothers had signed all the notes, or had authorized the signing of their names, and the case was tried on that theory; but the court gave the instruction requested by appellant, which declared the law applicable to his theory, and, if it was thought to be in conflict with the instruction given at appellant's request, that fact should have been pointed out specifically.

Appellant contends that instruction numbered 2 was erroneous in assuming that there was any evidence that G. H. Johnson signed the last note or authorized L. H.

Johnson to sign it. We think, however, the question of fact was not assumed, but was submitted to the jury, and that, when read in connection with appellant's instruction numbered 3, the jury was told to find for defendant G. H. Johnson, unless he signed the note or authorized L. H. Johnson to do so.

The instructions were not abstract, as the testimony of Covey and L. H. Johnson warranted them. If any one of the renewal notes was a forgery, there was a failure of consideration for the surrender of the note for which the forged note was substituted, and G. H. Johnson, as a business man and as a banker, must have known that in some way L. H. Johnson was having the paper carried as bankable paper, and we think, from all the testimony, the jury was warranted in finding that G. H. Johnson knew this was being done by renewals of the note. *Griffin* v. *Long,* 96 Ark. 268; *Hamiter* v. *State Natl. Bk.,* 106 Ark. 157; *King* v. *Bank of Pangburn,* 150 Ark. 138.

It is finally objected that instruction numbered 2, given at appellee's request, permitted the jury to make their finding from the facts *or* circumstances in the case. The instruction, however, does not read that way. The jury was told to base their verdict upon the facts *and* circumstances, which was, of course, proper, as the jury had the right to consider all the facts and circumstances developed by the testimony.

No error appears, and the judgment is affirmed.